UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JORGE FUENTES,** | **2:23-CV-12805-TGB-KGA** |
| Plaintiff, | HON. TERRENCE G. BERG |
| vs. | |
| **GEICO INDEMNITY COMPANY,** | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendant. | **(ECF NO. 24)** |

Plaintiff Jorge Fuentes was struck by a car while he was riding his motorcycle in 2019 and sustained serious injuries. Defendant Geico Indemnity Company insured the driver of the car involved in the accident. In this case, Fuentes is suing to recover from Geico various personal protection insurance benefits under Michigan's No-Fault Act, M.C.L. § 500.3101, *et seq*. Defendant Geico has filed a motion for partial summary judgment, asking the Court to dismiss certain expenses as not recoverable under the No-Fault Act. ECF No. 24. Fuentes has filed a Response in opposition. ECF No. 25. Upon review of the parties' filings, the Court concludes oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the present motion on the briefs pursuant to E.D. Mich. LR 7.1(f)(2).

For the reasons stated below, Geico's Motion for Partial Summary Judgment will be **GRANTED IN PART** and **DENIED IN PART**.

1

# I.    BACKGROUND

On September 3, 2019, Plaintiff Jorge Fuentes suffered serious brain and spinal cord injuries leaving him unable to care for himself when the motorcycle he was riding collided with a car being operated by an insured of Defendant Geico Indemnity Company ("Geico"). Fuentes's injuries include C6 Asia B Spinal Cord injury with resultant tetraplegia and traumatic cerebral edema with loss of consciousness. ECF No. 25, PageID.199, 210. Fuentes's wife reported that he was in a coma for nine days following the accident, and he underwent several surgeries, including anterior discectomy and fusion on C4–C7 with placement of a titanium plate, posterior cervical discectomy and fusion C3–T2, and open reduction internal fixation to right mandibular fracture. *Id.* He was initially treated at Beaumont Dearborn Hospital and later transferred first to inpatient rehabilitation and then eventually to in-home care and treatment. *Id.*

Pursuant to M.C.L. § 500.3114(5), when a motorcyclist is involved in an accident with a motor vehicle, the motorcyclist claims No-Fault benefits from "[t]he insurer of the owner or registrant of the motor vehicle involved in the accident," and his entitlement to benefits is governed solely by the statute. *See Harris v. Auto Club Ins. Ass'n*, 835 N.W.2d 356, 358 (Mich. 2013). Accordingly, following his accident, Fuentes sought personal protection insurance ("PIP") benefits from Geico, as the insurer of the motor vehicle involved in the September 3, 2019 accident.

2

Prior to the subject accident, Fuentes lived with his now-wife Tracy Fuentes in a home in Wyandotte, Michigan that was built in 1920. Deposition of Tracy Fuentes at 19, ECF No. 28, PageID.294. After Fuentes's accident, a Functional Home Assessment of the Wyandotte home was conducted, ECF No. 25, PageID.210–40, and the architectural consulting firm determined that the Wyandotte home could not be modified or renovated in a manner to make it handicap accessible and meet all of Fuentes's needs following the accident. *Id.* PageID.242–43. The firm recommended that Fuentes "look for another residence that can be made ADA compliant or find a lot on which we can design and build a new ADA compliant residence." *Id.*

Fuentes represents that, after he was released from the hospital following the accident, he first stayed in a managed residential facility and then moved to an apartment modified to meet his needs, with Geico paying the monthly rent, the insurance, the utilities, the wi-fi/internet and the cable, and a management fee. ECF No. 25, PageID.179. Tracy eventually mortgaged her Wyandotte house to buy and modify a second house on King Road in Brownstown Township, Michigan (the "King Road home") so that it would be handicap accessible for Fuentes. T. Fuentes Dep. at 15–16, ECF No. 28, PageID.290–91. Tracy rents the King Road home to Fuentes through her company, Kehlani Cares, which owns the King Road home. *Id.* at 13, 16–19, PageID.288, 291–94 (explaining that

3

Kehlani Cares also provides case management services to two other individuals).

Geico asserts that pursuant to the terms of the Residential Lease Agreement, Fuentes agrees to pay $4,000 per month in rent to Kehlani Cares, which payment includes property taxes and insurance, and that Fuentes would be "responsible for the payment of all utilities in relation to the home." ECF No. 24, PageID.141–42 (citing Residential Lease Agreement, PageID.158–67). Geico states that Fuentes is seeking reimbursement from Geico in the amount of $4,750 per month for housing expenses—$4,000 for rent and $750 for utilities. *Id.* PageID.142 (citing June 24, 2024 Demand Letter, PageID.169). Tracy Fuentes explained in her deposition that the $4,000 payment includes rent, home insurance, property taxes, and things like home repairs. T. Fuentes Dep. at 18, ECF No. 28, PageID.293. She stated that the additional $750 charge is for all utilities for the home, including gas, water, electric, cable, and internet. *Id.*[1]

---

[1]    Fuentes, on the other hand, asserts in his Response that he is currently claiming $3,800 per month in rental reimbursement, with the payment including $2,500 (principal and interest), $730 (property taxes), $175 (home insurance), and $461 (Fuentes's share of utilities) (which adds up to $3,866). ECF No. 25, PageID.180. He does not support this assertion with any evidence, such as a demand letter, and he does not further break down the $461 utilities claim to specific utilities, like electricity, water, cable, etc.

On November 3, 2023, Fuentes filed a Complaint against Geico, asserting a breach of contract claim and seeking PIP benefits under Michigan's No-Fault Act. ECF No. 1. Fuentes alleges that Geico has "neglected and/or refused to pay all of the allowable expenses to which [he] is entitled in accordance with the no-fault insurance contract and MCL 500.3101 et seq." including "[r]easonably necessary medical expenses," "[a]ttendant care services," "[m]edically necessary travel expenses," and "[o]ther allowable expenses to be determined." *Id.* ¶¶ 14, 17. Fuentes states that he had previously filed an action against Geico arising out of the September 3, 2019 accident in the Wayne County Circuit Court, which remains pending, but that the state court action is limited to all claims incurred on or before January 15, 2023. *Id.* ¶¶19–21. Accordingly, in this case, Fuentes seeks only PIP benefits from Geico that were incurred on or after January 16, 2023. *Id.* ¶ 22.

Geico has now moved for partial summary judgment, arguing that certain of Fuentes's claimed "allowable expenses" are not recoverable under Michigan's No-Fault Act. ECF No. 24. Geico concedes that "Plaintiff's overall housing arrangements and the base costs for him renting the home on King Road … would almost inherently present a question of fact best left for the jury," but argues that Fuentes's claims for benefits relating to charges such as utility bills, internet charges, and costs related to snow removal and lawn care are ordinary expenses that would be the same for an injured person and an uninjured person, and

thus those expenses are not recoverable under the Act. Geico requests that the Court therefore dismiss with prejudice any and all claims seeking those additional costs.

Fuentes filed a response in opposition to Geico's motion. ECF No. 25. Fuentes contends that the expenses in dispute are reimbursable under the No-Fault Act because his post-accident utility expenses are distinguishable from his pre-accident utility expenses and higher due to the medical equipment he is now required to run.[2] He contends that they present allowable expenses under the No-Fault Act and that Geico's motion therefore should be denied.

Geico did not file a reply brief.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[2]     In his response, Fuentes also addresses the question of whether his property taxes and home insurance payments are reimbursable, arguing that his share of the tax burden and home insurance on the King Road home should be reimbursed because those costs are integrated into the overall higher costs of maintaining a handicap-accessible home. But this issue is not raised in Defendant's motion for summary judgment or in its reply. Because Geico says nothing about property taxes or home insurance, the question of the reimbursability of those costs is considered waived for the purposes of that motion. *See* ECF No. 24. Accordingly, the Court will not address costs for property taxes or home insurance in this Order.

of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

7

## III.   DISCUSSION

Geico takes the position that the law does not entitle Fuentes to be compensated for utilities such as electricity and water, cable and internet services, and costs for lawn care or snow removal, because they are ordinary, everyday expenses that are the same for an injured and uninjured person and thus are not recoverable under Michigan's No-Fault Act. ECF No. 24. Fuentes argues that such costs are recoverable as allowable expenses under M.C.L. § 500.3107(1)(a).

**A. Allowable Expenses Under Michigan's No-Fault Act**

The Michigan No-Fault automobile insurance act, M.C.L. § 500.3101 *et seq.,* entitles those injured in automobile accidents to a variety of PIP benefits from responsible insurance carriers for certain expenses and losses. *Johnson v. Recca,* 821 N.W.2d 520, 523 (Mich. 2012). Among the categories of PIP benefits compensable under this scheme are those for "allowable expenses," M.C.L. § 500.3107, which Fuentes seeks in this case. "Allowable expenses" consist of "all reasonable charges incurred or reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation." M.C.L. § 500.3107(1)(a). Accordingly, for a PIP claimant to obtain benefits for an "allowable expense," the following must be true: "(1) the expense must be for an injured person's care, recovery, or rehabilitation, (2) the expense must be reasonably necessary, (3) the expense must be

8

incurred, and (4) the charge must be reasonable." *Douglas v. Allstate Ins. Co.,* 821 N.W.2d 472, 483 (Mich. 2012).

In determining what constitutes an "allowable expense," the Michigan Supreme Court has emphasized M.C.L. § 500.3107(1)(a)'s plain language, noting that unless a product, service, or accommodation is actually *for* an injured person's care, recovery or rehabilitation, it is not recoverable. *Admire v. Auto–Owners Ins. Co.,* 831 N.W.2d 849, 856 (Mich. 2013); *Griffith v. State Farm Mut. Auto. Ins. Co.,* 697 N.W.2d 895, 903 (Mich. 2005). Thus, costs for ordinary, everyday products, expenses, or accommodations that an injured claimant would otherwise bear absent the injury do not qualify as allowable expenses. *Admire,* 831 N.W.2d. at 856.

In *Griffith,* the Michigan Supreme Court considered whether the insurer was required to reimburse the insured for food costs as "allowable expenses" once the insured returned home following a stay at a 24-hour nursing facility. *Griffith,* 697 N.W.2d at 898. The court found that "care" was limited to "expenses for those products, services, or accommodations whose provision is necessitated by the injury sustained in the motor vehicle accident." *Id.* at 903. The court recognized that "[f]ood costs in an institutional setting are 'benefits for accidental bodily injury' and are 'reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation,'" because it is "'reasonably necessary' for an injured person to consume hospital food

during in-patient treatment given the limited dining options available." *Id.* at 904 ("Although an injured person would need to consume food regardless of his injuries, he would not need to eat *that particular food* [provided by the hospital] or bear the cost associated with it.") (emphasis in original)). However, once the injured person returned home and "may resume eating a normal diet just as he would have had he not suffered any injury," the court found that his food costs were not "related to his 'care, recovery, or rehabilitation'" because "[t]here has been no evidence introduced that he now requires *different food* than he did before sustaining his injuries as part of his treatment plan." *Id.* at 903, 906 (emphasis added). A reasonable inference from *Griffith's* holding is that if a person required different or special food upon his return home, as part of his treatment plan and for his injuries, then the cost of that food would be an allowable expense. On the other hand, if an injured person required no specialized diet or food as a consequence of his injuries, normal food costs would be generally treated as an ordinary expense that both injured and uninjured persons require, and it would not be an allowable expense.

Following *Griffith*, the Michigan Supreme Court in *Admire* stated that "[a] mere change in the injured person's postaccident expenses is insufficient to satisfy MCL 500.3107(1)(a)" and that instead "the new expense must be of a wholly different essential character than expenses borne by the person before the accident to show that it is *for* the injured

10

person's care, recovery, or rehabilitation." *Admire*, 831 N.W.2d at 857. However, the court recognized that "[s]pecial accommodations or modifications to an ordinary item [or expense] present a particular challenge," and while the joining of a special accommodation or modification to an ordinary item or expense does not deprive the accommodation or modification of its essential character, the scope of recovery under those circumstances depends upon whether the special accommodation or modification is "combined" or "integrated" with the ordinary item. *Id.* at 857–58. A "combined" accommodation or modification is one that, although joined to an ordinary product, may be separated into components related specifically to the injured person's care, recovery, or rehabilitation, such as an insole that an injured person might have to put in his or her shoe following an accident. *Id.* In those circumstances, only the separate components are compensable for "combined" modifications. *Id.* Following the insole/shoe example above, only the cost of the insole would be an allowable expense, but not that of the shoe itself. *See id.* at 858 n.43.

In contrast, an "integrated" modification is one blended with an ordinary product such that the resulting product or accommodation cannot be separated easily into unit costs. *Id.* As a result, an "integrated" product or expense is compensable in full. *Id.* The Michigan Supreme Court cited orthopedic shoes as an example of an integrated expense. *Id.* at 858–59. The court explained:

11

> When a medical products company produces a custom shoe, the shoe in an integrated product because the medical nature of the shoe, which is required for the injured person's care, recovery, or rehabilitation, cannot be separated from the ordinary need for shoes by an uninjured person. Thus, the entire cost of the shoe is an allowable expense.

*Id.* The court recognized that "[s]ome products, services, or accommodations might otherwise be ordinary but are so integrated with a product, service, or accommodation that it is actually *for* the injured person's care, recovery, or rehabilitation that the entire product, service, or accommodation must be included as an allowable expense under MCL 500.3107(1)(a)." *Id.* at 859.

At issue in *Admire* was whether the insurer was required to pay the entire cost of a van modified to accommodate the plaintiff's wheelchair, including both the base price of the van and the separately introduced modifications. *Id.* at 850. The Michigan Supreme Court held that the insurer was only required to pay for the modifications "because the modifications are allowable expenses 'for an injured person's care, recovery, or rehabilitation,'" while "the base price of the van is an ordinary transportation expense—an expense that is as necessary for the uninjured as the injured—and is easily separated from the modifications[.]" *Id.*

### B. Fuentes's Utility Expenses

Geico broadly argues that Fuentes's "expenses relating to utility bills, internet services, or any other ancillary costs associated with the

rental home on King Road in this case cannot be compensable under the No-Fault Act because they are ordinary, everyday items that [Fuentes] … would need regardless of any injuries he sustained in the at-issue accident" and they "are not *for* [Fuentes's] care, recovery, or rehabilitation." ECF No. 24, PageID.147. Geico lists those disputed charges as "utility bills for electricity and water, cable and internet charges through Xfinity, and even supposedly incurred expenses for lawn care and snow removal." *Id.* PageID.140, 147.[3]

Geico asserts that the Michigan Supreme Court stated in *Admire* that "[a] mere change in the injured person's postaccident expenses is insufficient to satisfy MCL 500.3107(1)(a); the new expense must be of a wholly different essential character than expenses borne by the person before the accident to show that it is *for* the injured person's care, recovery, or rehabilitation." *Id.* PageID.148 (citing *Admire*, 831 N.W.2d at 857). Geico argues that Fuentes, whether injured or not, would be required to pay for electricity, water, or internet, regardless of whether he was living at the wheelchair accessible King Road home or elsewhere, and that these costs are "inherently separable" from any other rental charges associated with that home. *Id.* PageID.151. Geico concludes that

---

[3]   It is not clear what "other ancillary costs" Geico may be referring to, but to the extent Geico does not identify and address any other such "ancillary costs," other than those listed above, the Court finds any argument as to such expenses (including home insurance and property taxes) waived for purposes of this motion.

while it concedes that the reasonableness of the base rent for the King Road home is a question for the jury, the Court should find as a matter of law that Fuentes is not permitted to recover additional, ordinary expenses for $750 that are easily separated from the costs to rent the home and that are borne by any individual, regardless of their injuries. *Id.* PageID.142 fn.2, 154.

Fuentes argues in response that Geico misrepresents the Michigan Supreme Court's holding in *Admire.* Fuentes asserts the "full *Admire* test involves first determining whether the expense at issue is part of an 'integrated' or 'combined' product," ECF No. 25, PageID.184–85. As the Michigan Supreme Court stated:

> A "combined" product or accommodation results from an ordinary expense, unchanged as a result of the injury, being joined with an accommodation or product that is actually *for* the injured person's care, recovery, or rehabilitation. An "integrated" product or accommodation involves the blending of an ordinary expense with one that is for the injured person's care, recovery, or rehabilitation in a way that the resulting product or accommodation cannot be separated easily into unit costs. Unlike an integrated product or accommodation, a combined product or accommodation can be separated easily, both conceptually and physically, so that the fact-finder can identify which costs are of a new character and are thus *for* the injured person's care, recovery, or rehabilitation and which costs are ordinary, everyday expenses that are unchanged after the accident. As this Court suggested in *Griffith,* MCL 500.3107(1)(a) requires the insurer to cover a truly integrated product or accommodation in full because the entire expense, including the portions that might otherwise be considered ordinary, is necessary for the injured person's

14

care, recovery, or rehabilitation. But because a combined product or accommodation can be easily separated into components related to the injured person's care, recovery, or rehabilitation and components unrelated to that care, recovery, or rehabilitation, only the related expenses are actually compensable. MCL 500.3107(1)(a) mandates this result because, when the product or accommodation can be easily separated into an ordinary expense and an expense *for* care, recovery, or rehabilitation, requiring the insurer to pay for the ordinary expenses would destroy the cost-containment aspect of the no-fault insurance act, something of which this Court has long been mindful.

*Admire*, 831 N.W.2d at 857–58. Fuentes contends that the *Admire* court did not fully explain which expenses are of a "wholly different essential character," but did state that "[s]ome products, services, or accommodations might otherwise be ordinary but are so integrated with a product, service, or accommodation that is actually *for* the injured person's care, recovery, or rehabilitation that the entire product, service, or accommodation must be included as an allowable expense under MCL 500.2107(1)(a)." *Id.* at 859. Fuentes argues that his utility usage is a fully compensable, integrated expense, even when separated from the home rental costs and viewed as its own category. Fuentes argues that he would be entitled to reimbursement for the increase in his utility expenses due to electricity usage associated with the medical equipment he is required to run, and due to gas/electricity usage associated with the temperature he is required to keep his house at due to his weakened neurological system which affects his ability to maintain an appropriate

15

body temperature, and that these are "integrated" expenses recoverable in full. ECF No. 25, PageID.189. Fuentes further argues that the fact that his wife Tracy is also living in the home does not affect this analysis because Fuentes needs 24/7 care and supervision, and Tracy is one of those care providers. So if she was not there in the house, another care provider would be. *Id.*

Gieco is correct that utilities such as electricity, gas, water, cable, and internet are ordinary services a person would use whether injured or uninjured. However, that fact does not absolutely bar recovery for such expenses. While it is true that a claimant, whether injured or not, would be required to pay for utilities such as electricity, water, and cable or internet, the Court cannot say that such expenses would never be compensable as an allowable expense. For example, if a plaintiff can show that *additional, different*, or *new* electricity, gas, water, internet or cable usage is necessary because of certain equipment needed or other special needs of the injured person as a result of his injury, and thus *for* his care, recovery, or rehabilitation, the expense could be fully compensable as an "integrated" expense because the additional expense could not be separated from the ordinary need for such services. *See Admire*, 831 N.W.2d at 858–59.

To this end, Fuentes contends that he had "numerous medical machines that consume electricity in the house" and that one of the consequences of his quadriplegia is that his body has an impaired ability

16

to regulate itself and "he has to keep the house at a very stable temperature, around 75 degrees year-round," and he thus "incurs higher than normal heating bills in the spring, fall, and winter (plus some summer nights" and "higher than normal electricity bills related to air conditioning in the summer." ECF No. 25, PageID.180–81; *see also* T. Fuentes Dep. at 20, ECF No. 28, PageID.295 (testifying that costs for utilities such as electric and gas "would be way less expensive [before Fuentes's injury] than the cost now" because "[Fuentes] requires a lot more utility services for his equipment and care."). Geico did not file a reply brief and thus has not disputed this contention, and does not dispute, for purposes of this motion, that Fuentes is seriously injured and requires 24/7 care. On this record, the Court finds that there is a genuine issue of material fact as to whether Fuentes's postaccident utility expenses for gas and electricity are higher than normal because of the equipment Fuentes needs for his care and the need to regulate the home's temperature and that those incremental increased costs are thus causally related to his injuries and *for* his care, recovery, or rehabilitation, and therefore potentially recoverable as allowable expenses under Michigan's No-Fault Act. Geico's motion for partial summary judgment as to those utility expenses for gas and electricity therefore will be denied.

However, while Fuentes contends that his electricity and gas usage is higher because of the medical equipment he is required to run and the

17

need to keep the temperature at a constant temperature, he does not address his claim for allowable expenses for cable, internet, or water under *Admire* or explain how or why those ordinary expenses are different for Fuentes as an injured person than what they would be for a non-injured person, nor does he indicate how these kinds of expenses are specifically *for* his care, recovery, or rehabilitation. *See* ECF No. 25, PageID.189 ("Plaintiff would at least be entitled to reimbursement for the increase in his utility expense due to electricity usage associated with the medical equipment he is required to run, and due to gas/electricity usage associated with the temperature he is required to keep his house at due to his weakened neurological system which affects his ability to maintain an appropriate body temperature."). Accordingly, the record creates no genuine issue of fact regarding those costs, and Geico is therefore entitled to summary judgment as to Fuentes's claims for expenses for cable, internet, and water as allowable expenses in this case.

### C. Lawn Care and Snow Removal

Geico also argues that Fuentes is not entitled to recover any costs for lawn maintenance and snow removal because costs for those tasks are "prototypical 'ordinary and necessary' services that every Michigan household must undertake," and are properly characterized as replacement services under M.C.L. § 500.3107(c) and not allowable expenses. ECF No. 24, PageID.148 fn.7. M.C.L. § 500.3107(c) provides for reimbursement of replacement services for "[e]xpenses not exceeding $20

per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed during the first 3 years after the date of the accident." "Services that were required both before and after the injury, but after the injury can no longer be provided by the injured person himself or herself *because* of the injury, are 'replacement services,' not 'allowable expenses.'" *Recca*, 821 N.W.2d at 526. Mowing the lawn and snow removal are not *for* a claimant's care, and thus are not recoverable as allowable expenses, but instead are characterized as replacement services. *See Douglas*, 821 N.W.2d at 485 (replacement services include "daily organization of family life; preparation of family meals; yard, house, and car maintenance; and daily chores"); *see also Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 657, 664 (E.D. Mich. 2014) (Michelson, J.) ("Preparation of family meals; yard, house, and car maintenance; and daily chores are replacement services as a matter of law."). "While replacement services for the household might be necessitated by the injury if the injured person otherwise would have performed them himself, they are not *for* his care and therefore do not fall within the definition of allowable expenses." *Douglas*, 821 N.W.2d at 485.

In this case, any claims by Fuentes for replacement services under the No-Fault Act were limited to the "first 3 years after the date of the accident," or until September 3, 2022. This case, however, is limited to a

19

claim for PIP benefits only on or after January 16, 2023. Complaint ¶ 22, ECF No. 1. Accordingly, replacement services are not at issue here and Fuentes is not entitled to payment for replacement services as lawn care and snow removal in this case.

## IV.   CONCLUSION

For the reasons stated above, Geico's motion for partial summary judgment will be **GRANTED IN PART** and **DENIED IN PART**.

Specifically, Geico's motion is **DENIED** as to Fuentes's claim for electricity and gas expenses as allowable expenses under the Michigan No-Fault Act and **GRANTED** as to Fuentes's claim for recovery of expenses for cable, internet, water, lawn care, and snow removal.

**IT IS SO ORDERED.**

Dated: March 23, 2026          /s/Terrence G. Berg
                             HON. TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE